**FILED**
U S DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 28 2015

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**DONNA EDWARDS**                                              **PLAINTIFF**

V.                        CASE NO. 4:15CV465 -JM

**3M COMPANY and**                                            **DEFENDANTS**
**ARIZANT HEALTHCARE INC.**

### COMPLAINT

Comes now, Plaintiff, Donna Edwards, by and through her undersigned Attorneys, Paul Byrd Law Firm, PLLC, who brings this Complaint against the Defendants, 3M Company and Arizant Healthcare Inc., alleges and states:

### I. INTRODUCTION

1.     On July 27, 2011, Plaintiff Donna Edwards went to Baptist Health Hospital in Little Rock, AR, to have a hip device implanted in her right hip. At some during her visit, the anesthesiologist placed a Bair Hugger Forced Air Warming device over Ms. Edwards. This product is manufactured by Separate Defendants 3M Company and Arizant Healthcare Inc. Either while using the Bair Hugger Forced Air Warming device or after the device was used on her, Ms. Edwards developed severe infections as a result of the Bair Hugger Forced Air Warming device being placed on her, causing severe and permanently disabling injuries to her. Ms. Edwards brings her claims against Separate Defendants named herein pursuant to Arkansas state law seeking remedy for the injuries suffered by her as a result of this device.

This case assigned to District Judge ___Moody___
and to Magistrate Judge____Deere____

## II. PARTIES

2.      Donna Edwards incorporates by reference herein the preceding paragraph as though stated word-for-word.

3.      At all times relevant hereto, Plaintiff Donna Edwards is a resident and citizen of Garland County, Arkansas.

4.      Separate Defendant 3M Company is a Delaware corporation with its principal place of business located in Maplewood, Minnesota. 3M Company is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the Bair Hugger Forced Air Warming device (hereinafter referred as "Bair Hugger FAW").  The registered agent for service of process in Arkansas is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

5.      Separate Defendant Arizant Healthcare, Inc. is a corporation organized under the laws of the State of Delaware doing business in the State of Minnesota, and is a wholly owned subsidiary of Separate Defendant 3M Company. The registered agent for service of process in Arkansas is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.  The registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.

## III. JURISDICTION AND VENUE

6.      Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

7.     This Court has jurisdiction of the parties and subject matter pursuant to 28 U.S.C. § 1332, because complete diversity exists between Donna Edwards and Separate Defendants and because the amount in controversy exceeds $75,000.00.

8.     Venue is proper in the Eastern District of Arkansas pursuant to 28 U.S.C. § 1391, as a substantial number of events, actions, or omissions giving rise to Ms. Edwards's Complaint occurred in the Eastern District of Arkansas. At all times relevant to this matter, Separate Defendants conducted substantial business in this district.

9.     Furthermore, Separate Defendants, including their agents, employees, servants and representatives, engage in or conduct substantial business in Arkansas and purposefully avail themselves of the privileges of conducting business in Arkansas. Further, the incident occurred in Arkansas. Acts and omissions pertaining to the cause of this incident occurred in Pulaski County, Arkansas, which is in the Eastern District of Arkansas, and were the cause of or contributed to the incident. Thus, due process is not offended by the assertion of jurisdiction over Separate Defendants.

## IV. FACTS –THE BAIR HUGGER FORCED AIR WARMER DEVICE

10.    Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

11.    Separate Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold the Bair Hugger FAW.

12.    Despite knowing the dangers of the Bair Hugger FAW, Defendants concealed and continue to conceal their knowledge of the Bair Hugger FAW's

unreasonably dangerous risks from Donna Edwards, other consumers, and the medical community.

13.     After Separate Defendants began to market, advertise, distribute, and sell the Bair Hugger FAW, they failed to conduct adequate and sufficient post-marketing surveillance.

14.     Upon information and belief, there are more than 50,000 Bair Hugger FAW devices currently in use across the country.

15.     The Bair Hugger FAW works by using a flexible hose to connect a portable heater/blower to a disposable blanket.  The blanket is then positioned over, or in some cases under, surgical patients.  The device then warms patients during surgery by blowing hot air on a patient's exposed skin.

16.     This hot air produced by Bair Hugger FAW gathers under the surgical blanket covering the patient and then escapes from under the surgical drape either below the level of the surgical table or at the head end of the surgical table.  This escaped air creates airflow currents that flow against the downward airflow of the operating room. As the warmed air rises, the air deposits bacteria from the floor of the surgical room into the surgical site of the patient.

17.     Upon information and belief, at some point between 2002 and 2009, Separate Defendants reduced the efficiency of the air filtration of Bair Hugger FAW devices, which reduced the safety of the devices.

18.     Because of the reduced efficiency of the air filtration, the internal airflow paths of Bair Hugger FAW devices become contaminated with pathogens.

19.     The pathogens that contaminate the internal airflow paths of Bair Hugger FAW devices incubate and grow throughout.

20.     These pathogens are then released from inside the Bair Hugger FAW device through the outward airflow.   These pathogens then travel through the flexible hose into the disposable blanket, which then escapes into the operating room.

21.     Upon information and belief, Separate Defendants have been aware since at least 2009 of the pathogenic contamination of the airflow paths of Bair Hugger FAW devices.

22.     In spite of their awareness, Separate Defendants have actively and aggressively marketed the Bair Hugger FAW as safe in both general and orthopedic surgeries.

23.     In fact, Separate Defendants told the Food and Drug Administration ("FDA") in September 2000 that the Bair Hugger FAW's filtration system meets High Efficiency Particulate Air ("HEPA") standards.   However, this statement is simply not true as shown below.

24.     Air filters like the Bair Hugger FAW devices are must confer with HEPA standards.

25.     To meet HEPA standards, an air filter must be capable of removing 99.97% of all particles 0.3 microns or larger.

26.     Despite being marketed as HEPA compliant, the Bair Hugger FAW device is only capable of removing less than 65% of all such particles.

27.     When Separate Defendants told the FDA that Bair Hugger FAW devices were HEPA compliant, they had actual knowledge that the devices were not capable of meeting HEPA standards.

28.     Going back even further, in June 1997, Separate Defendants admitted in a letter to the FDA that "air blown intraoperatively across the surgical wound may result in airborne contamination."

29.     Separate Defendants addressed this flaw in their product by stating to the FDA that the risk of contamination by airflow is obviated because all "Bair Hugger Blankets designed for use in the operating room feature a tape barrier, which prevent air from migrating toward the surgical site."

30.     Despite this assertion to the FDA, not all Bair Hugger Blankets marketed as safe for use in surgeries utilize a taped edge.    Instead, those blankets blow contaminated air directly toward the surgical field.

31.     Furthermore, the assertion that the taped barrier would somehow contain the contaminated air is false because it ignores the fact that heated air from the Bair Hugger FAW devices rises against the general downward airflow of the operating theatre.  The presence of a taped edge does nothing to prevent the Bair Hugger FAW from facilitating the movement of pathogens from the floor of the operating room to the surgical site.

32.     Separate Defendants had actual knowledge of the misrepresentations to the FDA when they made them.

33.     In their website, www.FAWFacts.com/laminar_airflow/ (last visited July 27, 2015), Separate Defendants make the following misrepresentations:

    a.    Contamination mobilized by the convection currents generated by the Bair Hugger FAW cannot reach the surgical site because "[a]ir velocity within the operating theatre is may times stronger than that of the forced-air warming blanket;

    b.    "The air emerging from the blanket is directed downward by the surgical drape and emerges under the operating room table and is drawn away through the laminar system's return air inlets;"

    c.    "It's been suggested that warm air rising above the Bair Hugger blanket could interfere with the downward laminar flow toward the surgical site. It should be noted that the Bair Hugger warming unit delivers less than one percent of the airflow of a laminar flow system and the momentum of the downward air is far greater than the upward momentum imparted to the air above the blanket."

34.    These statements in ¶33 are false and intentionally misleading because Separate Defendants disguise the fact that the issue is not the strength of the airflow in a laminar system but actually the heat of the air generated by the Bair Hugger FAW devices.

35.    As the cold air circulates in the operating room, it has a higher density than the air heated by the Bair Hugger FAW device. This causes the cold air to fall to the floor which then forces the contaminated air already at and around the floor of the operating room to rise with the air warmed by the waste heat from the Bair Hugger FAW device. As the contaminated air rises, it enters into the sterile field and the surgical site of the patient.

36.    Thus, the heated air rises. It is not "drawn away" as Separate Defendants' posit in their advertisement described in ¶33(b).

37.    Here is another example of Separate Defendants making a false and deliberately misleading advertisement that has appeared in multiple medical

publications as early as 2010, which is still available online at http://www.fawfacts.com/_asset/zn062p/ (last visited July 27, 2015):

> "While simple logic makes it clear that forced air warming has no impact on laminar conditions, science also supports this. A forced air warming blanket delivers less than one percent of the airflow of a laminar flow system and therefore is unable to affect laminar flow ventilation systems."

38.     Scientific research, published before and after this statement in ¶37, has demonstrated this statement in ¶37 to be untrue. The exhaust generated by the Bair Hugger FAW device creates convective airflow patterns that do disrupt the laminar flow of the operating theatre.

39.     Despite the scientific research, Greta Deutsch, who is Separate Defendants' public relations and communications specialist, stated in a communication that appeared in *Healthcare Purchasing News* in July 2012, "some conductive-warming manufacturers have alleged that forced-air warming increases bacterial contamination of operating rooms or interrupts laminar airflow. These accusations have no factual basis."

40.     The statement made by Greta Deutsch in ¶39 ignores numerous published studies documenting the adverse effects the Bair Hugger FAW device has on laminar airflow.

41.     The following peer-reviewed studies have been published:

a.     Albrecht M, Leaper D et al. Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. *Am J Infect Control* 2011;39:321-8;

b.     Leaper D et al. Forced-air warming: a source of airborne contamination in the operating room? *Orthopedic Rev.* 2009;1(2):e28;

c.   McGovern et al. Forced-air warming and ultra-clean ventilation
do not mix. *J Bone and Joint Surg-Br.* 2011;93(11):1537-1544;

d.   Legg et al. Do forced air patient-warming devices disrupt
unidirectional downward airflow? *J Bone and Joint Surg-Br.*
2012;94-B:254-6;

e.   Belani et al. Patient warming excess heat: The effects on
orthopedic operating room ventilation          performance.
*Anesthesia & Analgesia* 2012 (prepublication on-line)
2013;117(2):406-411; and

f.   Dasari et al. Effect of forced air warming on the performance
of operating theatre laminar flow ventilation. *Anaesthesia*
2012;67:244-249.

42.   These peer-reviewed studies in ¶41 document and reveal the critical

safety shortcomings of the Bair Hugger FAW device.

43.   When confronted by these peer-reviewed studies, Separate Defendants

should have been prompted to redesign and/or discontinue the Bair Hugger FAW

device.

44.   Instead, those criticisms only caused Separate Defendants to amplify their

efforts to champion the Bair Hugger FAW device.

45.   Separately and cumulatively, these misrepresentations misled healthcare

providers about the safety of the Bair Hugger FAW devices for use in surgical

procedures. Separate Defendants knew of the falsity of their misrepresentations at the

time the misrepresentations were authored.

## V. FACTS – DONNA EDWARDS'S ENCOUNTER WITH THE BAIR HUGGER FAW DEVICE

46.   Donna Edwards incorporates by reference herein the preceding

paragraphs as though stated word-for-word.

47.   On July 27, 2011, Donna Edwards underwent right hip replacement

surgery at Baptist Health Hospital in Little Rock, AR.

48.     This type of procedure is commonly referred to as an orthopedic implant surgery.

49.     During surgery, the anesthesiologist placed a Bair Hugger FAW device on Donna Edwards.

50.     During the surgery, Donna Edwards suffered a post-operative infection because the Bair Hugger FAW device introduced contaminants on her open surgical site.

51.     Donna    Edwards's    infection    contained    non-Methicillin-resistant Staphylococcus Aureus which was introduced as a result of the Bair Hugger FAW device.

52.     There was no way Donna Edwards could have reasonably and/or prudently known that the cause of her injuries were the use of the Bair Hugger FAW device until near the date of the filing of this lawsuit.

53.     The use of the Bair Hugger FAW device caused severe infection to Donna Edwards and other severe and permanent injuries to Donna Edwards.

54.     The physicians for Donna Edwards relied upon Separate Defendants' representations and advertisements as highlighted in ¶¶10-45 to Ms. Edwards's detriment.

55.     Any reasonable and competent physician would not use a Bair Hugger FAW device in an orthopedic implant surgery if he or she were fully apprised of the dangers and risks associated with doing so.  However, through misrepresentations to the public, to the medical community, and to the FDA, Separate Defendants actively

concealed the infection-causing propensity of the Bair Hugger FAW devices in orthopedic implant surgeries.

56.    As a result of the failure of Separate Defendants' Bair Hugger FAW devices to maintain the sterility of the surgical area and the Defendants' wrongful conduct in designing, manufacturing, marketing and failing to warn this defective product, Donna Edwards and her physician were unaware, and could not have reasonably known or could not have learned through reasonable diligence, that Ms. Edwards had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Separate Defendants' acts, omissions, and misrepresentations.

### VI. COUNT 1: NEGLIGENCE BY SEPARATE DEFENDANTS

57.    Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

58.    Separate Defendants, as the manufacturers of Bair Hugging FAW device, owed Donna Edwards a duty to exercise reasonable ordinary care in the design, manufacture, storage, marketing, advertisement, distribution, and selling of the Bair Hugging FAW device in order to protect those who would use it from unreasonable risk of harm, and to give adequate warnings and instructions for its intended use.

59.    In failing to do exercise reasonable ordinary care as described in the preceding paragraph, Separate Defendants were negligent.    This negligence proximately caused the injuries and damages to Donna Edwards, herein alleged, to wit:

        a.    Failure to properly and thoroughly test Bair Hugger
            FAW device before releasing the device to market;

b.  Failure to properly and thoroughly analyze the date resulting from the pre-market tests of the Bair Hugger FAW device;

c.  Failure to conduct sufficient post-market testing and surveillance of the Bair Hugger FAW device;

d.  Failure to provide an adequate warning of the significant and dangerous risks of the Bair Hugger FAW device to consumers, including Donna Edwards, when Separate Defendants designed, manufactured, marketed, advertised, distributed, and sold the device.

e.  Failure to provide proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

f.  Failure to exercise due care when advertising and promoting the Bair Hugger FAW device;

g.  Failure to cease the manufacture, market, advertise, and distribute the Bair Hugger FAW device after Separate Defendants knew or should have known of its adverse effects; and

h.  Failure to use ordinary care for the safety of Donna Edwards and others.

60.  Separate Defendants, as the manufacturer of the Bair Hugger FAW device, failed in its' duty to use ordinary care in its design; selection of the materials in the device; assembly; inspection; testing; and packaging in order to protect Donna Edwards and others who would use the device from unreasonable risk of harm.

61.  Separate Defendants, as the manufacturer of the Bair Hugger FAW device, failed in its' duty to Donna Edwards to warn of dangers, inherent or reasonably foreseeable, in the use of the Bair Hugger FAW device.

62.  Separate Defendants, as the manufacturer of the Bair Hugger FAW device, failed in its' duty to give reasonable and adequate instructions with respect to

the conditions and methods of its safe use when danger is reasonably foreseeable in its use.

63.     As a direct and proximate result of the use of Separate Defendants' product and the wrongful and negligent acts and/or omissions and/or misrepresentations of Separate Defendants, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

64.     The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

### VII. COUNT 2: STRICT LIABILITY OF SEPARATE DEFENDANTS

65.     Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

66.     At all times pertinent to this cause of action, Separate Defendants were in the business of assembling, manufacturing, and selling the Bair Hugger FAW device.

67.     Separate Defendants, or entities under their control, manufactured, sold, distributed, marketed, or supplied the Bair Hugger FAW device in a defective and unreasonably dangerous condition to consumers, including Donna Edwards.

68.     Specifically, Separate Defendants failed to warn of the injuries suffered by Donna Edwards as a result of using the Bair Hugger FAW device, and they introduced a defectively designed or manufactured product into the stream of commerce.

69.     At the time that Separate Defendants manufactured and sold the Bair Hugger FAW device to Donna Edwards, the device contained defects in its design that made it unreasonably dangerous and unfit for its intended use. These defects include, but are not limited to, defect in design, defect in the manufacturing process, defect in marketing by improper and inadequate instructions, and failure to warn of the latent dangers of the product.

70.     Separate Defendants designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger FAW device, which was expected to reach, and did in fact reach, consumers, including Donna Edwards, without substantial change in the condition in which the device was manufactured or sold by Separate Defendants.

71.     Donna Edwards and her physicians used the Bair Hugger FAW device in a manner normally intended, recommended, promoted, and marketed by Separate Defendants.

72.     The Bair Hugger FAW failed to perform safely when used by ordinary consumers, including Donna Edwards, including when it was used as intended and in a reasonably foreseeable manner.

73.     The propensity of the internal airflow passageways in the Bair Hugger FAW device, including its non-HEPA compliant filter, to become contaminated with pathogens makes the Bair Hugger FAW device dangerous when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated

by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

74.    Separate Defendants are strictly liable for the injuries to Donna Edwards caused by the design defect in the Bair Hugger FAW device. Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages, and will continue to incur and suffer all of these injuries in the future. Ms. Edwards's injuries and losses are continuing and permanent in nature.

75.    As a direct and proximate result of the defective design of the Bair Hugger FAW device, Donna Edwards asserts a claim for strict liability against Separate Defendants. Ms. Edwards prays for a judgment for all compensatory and punitive damages against Separate Defendants *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

76.    The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## VIII. COUNT 3: FAILURE TO WARN BY SEPARATE DEFENDANTS

77.    Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

78.    Separate Defendants researched, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce the Bair Hugger FAW device, and in doing so, directly advertised and/or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, Separate Defendants had a duty to warn of the risks associated with the use of the Bair Hugger FAW device.

79.    Separate Defendants failed to adequately warn health care professionals and the public, including Donna Edwards and her physician, of the true risks of the Bair Hugger FAW device, including that the Bair Hugger FAW device would circulate contaminated air in the operating room and that the vented heat from the Bair Hugger FAW device would mobilize floor air contaminated with pathogens into the patient's surgical site, causing deep joint infections, and requiring further treatment, including more surgery.

80.    Separate Defendants failed to provide timely and reasonable warnings regarding the safety and effectiveness of the Bair Hugger FAW device. Had Separate Defendants done so, proper warnings would have been heeded and no health care professional, including Donna Edwards's physicians, would have used Bair Hugger FAW device, and no patient, including Donna Edwards, would have allowed use of the Bair Hugger FAW device.

81.    Because Separate Defendants failed to provide timely and reasonable warnings, instructions, and information regarding the Bair Hugger FAW device to Donna Edwards or her physician, they rendered the device unreasonably dangerous.

82.    As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

83.    The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## IX. COUNT 4: DEFECTIVE DESIGN AND MANUFACTURE BY SEPARATE DEFENDANTS

84.    Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

85.    The design of the Bair Hugger FAW device or its component parts makes the Bair Hugger FAW device unreasonably dangerous, taking into consideration the utility of the device and the risk involved in its use.

86.    At all times relevant to this cause of action, an economically and technologically feasible safer alternative design existed, which in reasonable medical

probability would have prevented or significantly reduced the risk of Donna Edwards's infection and subsequent injuries (including additional surgical procedures to clean the infected area and/or remove the implant) and would not have impaired the utility of the device.

87.     Specifically, the Bair Hugger FAW device is defective in the design in that it is not reasonably fit, suitable, or safe for its intended purpose; or its foreseeable risks exceed the benefits associated with its design.

88.     The defective condition of the Bair Hugger FAW device rendered it unreasonably dangerous and/or not reasonably safe. Furthermore, the Bair Hugger FAW device was in this defective condition at the time it left the hands of Separate Defendants. The Bair Hugger FAW system was expected to, and in fact did, reach Donna Edwards and her physicians without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied, and otherwise released into the stream of commerce.

89.     Separate Defendants knew, or should have known, of the dangers associated with the use of the Bair Hugger FAW device, as well as the defective nature of the Bair Hugger FAW device. Nevertheless, Separate Defendants have continued to design, manufacture, sell, distribute, market, promote, or supply the Bair Hugger FAW device so as to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm caused by the Bair Hugger FAW device.

90.     As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and

future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

91.    The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## X. COUNT 5: BREACH OF EXPRESS WARRANTY BY SEPARATE DEFENDANTS

92.    Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

93.    Separate Defendants expressly represented to Donna Edwards and other consumers and the medical community that the Bair Hugger FAW device was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

94.    However, the Bair Hugger FAW device does not conform to Separate Defendants' express representations because it is not safe; it has numerous and serious side effects; and it causes severe and permanent injuries.

95.    At all times relevant to this cause of action, the Bair Hugger FAW device did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

96.     The aforementioned representations made by Separate Defendants and/or their agents were intended to directly and/or indirectly induce persons such as Donna Edwards to purchase the Bair Hugger FAW device.

97.     Donna Edwards, other consumers, and the medical community reasonably relied upon Separate Defendants' express warranties for the Bair Hugger FAW device.

98.     At all times relevant to this cause of action, the Bair Hugger FAW device was used on Donna Edwards by her physicians for the purpose and in the manner intended by Separate Defendants.

99.     Donna Edwards was a person whom Separate Defendants might reasonably have expected to use the Bair Hugger FAW device.

100.    Donna Edwards either directly or indirectly purchased and/or paid for the purchase of the product from Separate Defendants.

101.    By using reasonable care, Donna Edwards and her physicians could not have discovered the breached warranty and realized its danger.

102.    The Bair Hugger FAW device failed while being used for its intended purpose.  Thus, the device did not conform to Separate Defendants' express warranty, and Separate Defendants therefore breached same.

103.    As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-

taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

104.   The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## XI. COUNT 6: BREACH OF IMPLIED WARRANTY BY SEPARATE DEFENDANTS

105.   Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

106.   Separate Defendants designed, manufactured, distributed, advertised, promoted, and sold the Bair Hugger FAW device.

107.   At all times relevant to this cause of action, Separate Defendants knew of the use for which the Bair Hugger FAW device was intended, and they impliedly warranted the product to be of merchantable quality, safe, and fit for such use.

108.   Separate Defendants were aware that consumers, including Donna Edwards, would use the Bair Hugger FAW device for treatment in connection with certain surgical procedures.

109.   Donna Edwards, her physicians, and the medical community reasonably relied upon Separate Defendants' judgment and sensibility to sell the Bair Hugger FAW device only if it was indeed of merchantable quality, safe, and fit for its intended use.

110.   Separate Defendants breach their implied warranty to consumers, including Donna Edwards because the Bair Hugger FAW device was not of merchantable quality, safe, or fit for its intended use.

111. Consumers, including Donna Edwards, her physicians, and the medical community reasonably relied upon Separate Defendants' implied warranty for the Bair Hugger FAW device.

112. By using reasonable care, Donna Edwards and her physicians could not have discovered the breached warranty and realized its danger.

113. As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

114. The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## XII. COUNT 7: NEGLIGENT MISREPRESENTATION BY SEPARATE DEFENDANTS

115. Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

116. Separate Defendants made negligent misrepresentations with respect to the Bair Hugger FAW device, including, but not limited to, the following particulars:

       a.   Separate Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions

> that the Bair Hugger FAW device has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and
>
> b.   Separate Defendants represented that the Bair Hugger FAW device was safer than other patient warming systems.

117.   Separate Defendants failed to exercise reasonable care and/or competence in obtaining the information regarding the characteristics and qualities of the Bair Hugger FAW device.

118.   Separate Defendants failed to exercise reasonable care and/or competence in communicating to the public the information regarding the characteristics and qualities of the Bair Hugger FAW device.

119.   Donna Edwards and her physicians did in fact reasonably rely upon these representations.

120.   As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

121.   The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## XIII. COUNT 8: FRAUDULENT MISREPRESENTATION BY SEPARATE DEFENDANTS

122.   Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

123.   Separate Defendants made fraudulent misrepresentations with respect to the Bair Hugger FAW device, including, but not limited to, the following particulars:

> a.   Separate Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger FAW device has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

> b.   Separate Defendants represented that the Bair Hugger FAW device was safer than other patient warming systems.

124.   Separate Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligations to provide truthful representations to consumers, including Donna Edwards and the medical community, in regards to the safety and risks of the Bair Hugger FAW device.

125.   Separate Defendants made these representations with the intent that doctors and patients, including Donna Edwards, would rely upon them.

126.   Separate Defendants made these representations with the intent to defraud and deceive Donna Edwards, other consumers, and the medical community in order to induce and encourage the sale of the Bair Hugger FAW device.

127.   Donna Edwards and her physicians did in fact rely upon these representations.   But for Separate Defendants' representations, the Bair Hugger FAW device would not be used in orthopedic implantation surgeries like the one at issue in this case.

128. Separate Defendants' fraudulent representations demonstrate their callous, reckless, and willful indifference to the health, safety, and welfare of consumers, including Donna Edwards.

129. As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

130. The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## XIV. COUNT 9: FRAUDULENT CONCEALMENT BY SEPARATE DEFENDANTS

131. Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

132. Separate Defendants fraudulently concealed information with respect to the Bair Hugger FAW device, including, but not limited to, the following particulars:

> a. Separate Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger FAW device was safe and fraudulently withheld and concealed information about the substantial risk of using the Bair Hugger FAW device; and

b.   Separate Defendants represented that the Bair Hugger FAW device was safe and safer than other alternative systems and fraudulently concealed information that demonstrated that the Bair Hugger FAW device was not safer than available alternatives on the market.

133.   Separate Defendants had sole access to material facts concerning the dangers and unreasonable risks of the Bair Hugger FAW device.

134.   Separate Defendants intentionally concealed information about the risks of the Bair Hugger FAW device, and they knew the representations were false.

135.   Separate Defendants intentionally concealed information about the risks of the Bair Hugger FAW device and made misrepresentations about the device because they wanted doctors and patients, including Donna Edwards and her physicians, to rely upon the misrepresentations.

136.   Donna Edwards and her physicians relied upon the representations.

137.   Donna Edwards and her physicians were unaware of the substantial risks of the Bair Hugger FAW device, which Separate Defendants concealed from the public, including Donna Edwards and her physicians.

138.   As a direct and proximate result of Separate Defendants' wrongful and negligent acts and/or omissions and/or misrepresentations, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

139.   The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human

life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

## XV. COUNT 10: DECEPTIVE TRADE PRACTICES BY SEPARATE DEFENDANTS

140. Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

141. Separate Defendants designed, manufactured, stored, provided instructions for, warranted, distributed, and sold the Bair Hugger FAW device that was used on the body of Donna Edwards.

142. Separate Defendants knowingly made false representations as to the uses and/or benefits of the Bair Hugging FAW device. Separate Defendants represented to Donna Edwards that the device was a safe, suitable warming device for patients during orthopedic implant surgery, and Separate Defendants marketed their product as a safe and suitable warming device for patients during orthopedic implant surgery. Yet Separate Defendants were aware of the defects in the design of the device long before the device was sold to Donna Edwards. At least as far back as 2009, Separate Defendants were made aware of the design defect in the device. Separate Defendants were aware that the device was causing severe infections and causing permanent damage to patients. Despite its known design defects, Separate Defendants continued to sell and market the device, including the device sold to Donna Edwards.

143. Separate Defendants engaged in unconscionable, false, or deceptive act or practice in business, commerce, and/or trade by manufacturing, marketing, and selling the Bair Hugging FAW device when they knew that the device was defective in its design. As far back as 2009, Separate Defendants were aware that the device was

defective in its design but continued to market and sell the device anyway, earning significant profits with complete disregard for the health and safety of the consumers and their customers.

144. At all times relevant to this cause of action, Donna Edwards was a "Disabled Person" as defined by the Arkansas Deceptive Trade Practices Act.

145. As a "disabled person" within the meaning of the Deceptive Trade Practices Act, Donna Edwards has a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees.

146. As a direct and proximate cause of Separate Defendants' deceptive trade practices, Donna Edwards suffered, *inter alia,* severe and permanent injuries, scarring and disfigurement, past, present, and future lost wages and loss of earning capacity, conscious physical and emotional pain, suffering and mental anguish, past, present, and future medical costs, including care-taking expenses, and other damages in excess of the amount required for federal diversity jurisdiction.

147. The conduct by Separate Defendants as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Donna Edwards, thereby entitling Ms. Edwards to punitive damages so as to punish Separate Defendants and to deter them from similar conduct in the future.

### XVI. CAUSATION OF DONNA EDWARDS'S INJURIES AND DAMAGES

148. Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

149.    The injuries and damages sustained by Donna Edwards, more particularly described below, were produced in a natural and continuous sequence from Separate Defendants' violations of one or more of the above described independent duties to use ordinary care for the safety of Donna Edwards.

150.    The injuries and damages sustained by Donna Edwards were a probable consequence from Separate Defendants' violations of one or more of the above described independent duties to use ordinary care for the safety of Donna Edwards.

151.    Each Defendant should have foreseen and anticipated that a violation of one or more of the above described independent duties to use ordinary care and follow the safety rules would constitute an appreciable risk of harm to others, including Donna Edwards.

152.    If each Defendant had not violated one or more of the above described independent duties to use ordinary care and to follow the safety rules for the safety of Donna Edwards, then her injuries and damages would not have occurred.

### XVI. COMPENSATORY DAMAGES SUSTAINED BY DONNA EDWARDS

153.    Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

154.    The injuries and damages sustained by Donna Edwards as a result of each Defendants' violations of one or more of the above duties, include, but are not limited to, the following:

> a.    Serious and permanent bodily injuries to Donna Edwards, including severe infections, which is a life changing event causing Donna Edwards to lose the ability to enjoy a normal quality of life;
>
> b.    Medical expenses incurred in the past and reasonably expected to be incurred in the future, and

transportation expenses to obtain such medical treatment;

c.    Physical pain and suffering experienced in the past and reasonably expected to be experienced in the future;

d.    Loss of income in the past and reasonably expected to be experienced in the future;

e.    Loss of earning capacity due to permanent physical impairment from the injuries caused by the infection;

f.    Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes, but is not limited to, Donna Edwards's loss of quality of life due to permanent injuries causing chronic pain that limits her activities; and

g.    The reasonable expense of any necessary help in Donna Edwards's home in the past, and reasonably certain to be required in the future, as a result of Donna Edwards's injuries.

## XVIII. AMOUNT OF DAMAGES

155. Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

156. Donna Edwards's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which Donna Edwards should be awarded a judgment as against Separate Defendants in an amount to fully and fairly compensate her for each and every element of damages that has been suffered.

## XIX. PUNITIVE DAMAGES

157. Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

158.   Donna Edwards is also entitled to punitive damages for Separate Defendants' reckless acts and omissions that occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or damages to Donna Edwards.   Separate Defendants knew or should have known, in light of the surrounding circumstances, which its conduct would naturally and probably result in serious injury, and continued this conduct with malice and reckless disregard for the consequences of its actions for which punitive damages should be awarded. Donna Edwards is entitled to recover punitive damages in accordance with Arkansas law, based upon the careless disregard for the safety of Donna Edwards, other consumers, and the medical community, causing or contributing to serious and permanent injuries.

159.   In addition to actual, special, consequential and compensatory damages, Donna Edwards demands a judgment against Separate Defendants for punitive damages in an amount necessary and sufficient to deter Separate Defendants from the above described conduct and to punish Separate Defendants for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

160.   Separate Defendants' acts were willful and malicious in that Separate Defendants' conduct was carried on with a conscious disregard for the safety and rights of Donna Edwards.  Separate Defendants' unconscionable conduct thereby warrants an assessment of exemplary and punitive damages against Separate Defendants in an amount appropriate to punish Separate Defendants and deter similar conduct in the future.

161.   Separate Defendants' acts, misrepresentations, and/or omissions, as described therein, were performed with a realization of the imminent threat posed by the Bair Hugger FAW device, and were performed with reckless disregard or complete indifference to the probable result.

162.   Separate Defendants had actual, subjective awareness of the risks involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Donna Edwards and the community at large.

## XX. DEMAND FOR JURY TRIAL

163.   Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

164.   Donna Edwards demands a jury trial for all issues of fact presented by this action.

## XXI. RESERVATION OF ADDITIONAL CLAIMS

165.   Donna Edwards incorporates by reference herein the preceding paragraphs as though stated word-for-word.

166.   Donna Edwards reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Donna Edwards prays that after a jury trial of this action that she be awarded the following:

> a.   A judgment against Separate Defendants in such an amount that will fully and fairly compensate her for all of the above described damages and in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases;

> b.   A judgment and verdict against Separate Defendants

Page **32** of **33**

awarding exemplary and punitive damages as permitted by law;

c.    All costs expended herein including attorneys' fees and any expert costs and fees as permitted by law;

d.    A pre- and post-judgment interest award against Separate Defendants to compensate for loss of money and to the extent of and for the reasons permitted by law; and

e.    All other proper relief to which she may be entitled in the premises.

Dated this _____ day of July, 2015.

Respectfully submitted,

Annesley DeGaris, Bar No. ASB-9182-a63a
**DeGaris Law Group, LLC**
3179 Green Valley Rd 235
Birmingham, AL 35243
Phone: +1 (205) 281-5185
adegaris@degarislaw.com

Paul Byrd, Ark. Bar No. 85020
Joseph Gates, Ark. Bar No. 2010239
**Paul Byrd Law Firm, PLLC**
415 N. McKinley Suite 210
Little Rock, AR 72205
Phone: +1 (501) 420-3050
Fax: (501) 420-3128
paul@paulbyrdlawfirm.com
joseph@paulbyrdlawfirm.com

By: _____

Joseph Gates, Ark. Bar No. 2010239